24  217
103  525

BENJAMIN O. KEATON, plaintiff in error, vs. LEWIS S. Mc-GWIER, adm'r of E. M. M. GREENWOOD, dec'd, defendant in error.

[1.] Where the husband has been examined in a case, the wife is not admissible to discredit him, by proving facts, a knowledge of which she acquired by reason of the marriage relation.—BENNING J. hesitating.

[2.] The mere failure of a defendant, to answer an allegation in the bill, doe

not amount to an admission of the allegation, and make it evidence against him.

[3.] Although it may be, that the trustee disavows the trust, yet if he has an undue influence over the *cestui que trust*, the statute of limitations does not begin to run in his favor, until the cessation of that influence.

[4.] The complainant cannot avail himself of matter not contained in the bill, or in the answer, although it may be contained in the evidence.

[5.] A receipt in full given by the *cestui que trust* to the trustee, is *prima facie* evidence of a settlement in full between them; and consequently, casts on the former, the burden of proving, that the settlement was not in full.

[6.] Statutes of limitation obtain in a Court of Equity; and, to the extent to which they obtain there, they *bind* the Court.

In Equity, from Dougherty county. Tried before Judge ALLEN, at June Term, 1857.

The bill in this case, was originally filed by Elizabeth M. M. Greenwood, against Benjamin O. Keaton, for an account, discovery, relief, &c. Upon the death of Mrs. Greenwood, Lewis S. McGwier, was appointed her administrator and made the party complainant, and in his name the cause proceeded and came upon trial at the June Term, 1857.

The opinion pronounced by the Supreme Court will be fully understood from the bill of exceptions, which is as follows:

GEORGIA, DOUGHERTY COUNTY.

*Be it remembered,* That during the regular June Term, 1857, of the Superior Court of said county, his Honor ALEXANDER A. ALLEN, one of the Judges of the Superior Courts of said State, presiding; the cause of Lewis S. McGwier, administrator of the estate of Elizabeth M. M. Greenwood vs. Benjamin O. Keaton, being a bill for discovery, relief and account, filed by the said Elizabeth M. M. in her lifetime, came on to be heard upon the pleadings and evidence in said cause, and the parties having announced themselves ready for trial, counsel for the respondent moved the Court to have Lindsay H. Durham and Ambrose Wright, two of

Keaton vs. McGwier, adm'r.

the grand jurors in attendance and sworn, brought into Court for the purpose of placing them upon their *voir dire* to ascertain if they were liable to challenge for cause. The Court granted the motion, and the said Jurors were each placed upon his *voir dire,* and asked whether he had formed and expressed an opinion as to which party ought to prevail in the cause. The juror, Lindsay H. Durham, answered in the affirmative, and that his opinion was formed from having read the decision of the Supreme Court when the case was before it on demurrer; he farther stated that the opinion was still on his mind. On cross examination, he stated that if he were selected as a juror, he would be governed by the evidence alone, and not by the opinion. Counsel for defendant moved the Court to reject said juror for cause. The Court overruled the motion, and pronounced said Lindsay H. Durham a competent Juror, and counsel for defendant excepted. (*Waived.*)

The Juror, Ambrose Wright, in response to the question propounded, stated that he had formed and expressed an opinion as to which party ought to prevail in the case; that the opinion so formed and expressed was still on his mind. On cross examination he stated that if selected to try the cause, he would be governed alone by the evidence, and not by the opinion. Counsel for defendant moved the Court to reject said Juror for cause; the Court overruled the motion, and pronounced him competent. Both of said jurors were stricken by defendant's counsel. (*Waived.*)

The jury having been regularly empanneled to try said cause, complainant's counsel offered in evidence the depositions of Armijah Hall, taken by commission *de bene esse.* Counsel for defendant objected to the fourth cross interrogatory propounded to said witness, as follows: "What were defendant's circumstances at the time of receiving complainant's effects into his hands? How much land and negroes had he? What amount of money had he? Was he or not at the time a moneyed man, or known and regarded as such?

Was he a note-shaver, money-lender, or speculator in lands?" The Court overruled the objection and allowed the answer to said interrogatory to go in evidence, and counsel for defendant excepted. (*Waived.*)

Counsel for defendant objected to the fifth cross interrogatory propounded to said witness, as follows: "At what rate was defendant in the habit of lending money and in shaving notes?" The Court overruled the objection, allowed the answer to said interrogatory to be read in evidence, and counsel for defendant excepted. (*Waived.*)

Counsel for complainant next offered in evidence the depositions of James Jeffries, taken by commission *de bene esse* upon the application of defendant. Counsel for defendant objected to the sixth cross interrogatory propounded to said witness and the answer thereto. The interrogatory was as follows: "What sort of speculations and operations did he (defendant) engage in immediately after receiving these funds of complainant, and how much has he increased his property since that time?" The Court overruled the objection, permitted the answer to the interrogatory to be read, and counsel for defendant excepted. Counsel for defendant excepted to the answer of said witness to the eleventh interrogatory, on the ground that witness gave *his opinion* without stating the grounds of said opinion. The Court overruled the objection and permitted the answer to be read, and counsel for defendant excepted.

Counsel for complainant then offered in evidence, a deed from Benjamin O. Keaton, defendant, to Elizabeth M. M. Greenwood, complainant, bearing date the 12th day of September, 1839, and certificate endorsed thereon of 2d day of November, 1844. (*Waived.*)

Counsel for complainant then offered in evidence an exemplification of an action for criminal conversation brought by Benj. L. Greenwood against defendant, in Baker Superior Court, and filed in office 14th November, 1838. Counsel for

defendant objected to said exemplification going in evidence, because irrelevant.   The Court overruled the objection, and counsel for defendant excepted.   *(Waived.)*

Counsel for complainant next offered in evidence a certified copy of a deed purporting to have been executed by defendant to Hartwell H. Tarver, for lot of land number one hundred and forty-two, (142,) in the second district of originally Early county.   Counsel for defendant objected to said copy deed going in evidence, because the original was better evidence.   Complainant then introduced Paul E. Tarver and William Tarver, executors of the last will and testament of Hartwell Tarver, who testified that the original was not in the possession of either of them, but that it was in the possession of Alfred H. Colquitt, the present owner of said lot of land.   Paul E. Tarver had been served with subpœna *duces tecum* to produce said original deed; had a conversation with complainant and counsel and did not disclose that he did not have the deed before service of subpœna.   The Court overruled objection of defendant's counsel, and permitted the copy deed to go in evidence, and counsel for defendant excepted.   *(Waived.)*

The complainant's counsel introduced other testimony, a copy of which is heretofore appended and incorporated in the brief of testimony :

1st.  Complainant's counsel having closed their case, counsel for defendant introduced John A. Davis, David A. Vason, Thomas C. Spicer and James J. Mayo, whose evidence is hereto appended and incorporated in the brief of oral testimony.   Counsel for defendant also offered in evidence the depositions of Franklin Beck, which were read to the jury.   Counsel for defendant then offered to read in evidence the answers of Mrs. — Jeffries, to interrogatories sued out in this cause.   Counsel for complainant objected to said answers being read, on the ground that the witness was the wife of James Jeffries, now deceased, and that the object of

Keaton vs. McGwier, adm'r.

the testimony was to discredit him.   The Court, on examination of the answers, sustained the objection and ruled out all and every part of the answers, holding that the facts stated were derived by the witness from the confidential relation of husband and wife, and counsel for defendant excepted.   A copy of the answers are hereto appended and incorporated in the brief of testimony.

Counsel for defendant then offered in evidence various receipts—one for seven thousand five hundred dollars, dated 12th September, 1839; one for one thousand two hundred and fifty dollars for lot of land sold to Hartwell H. Tarver, 2d November, 1844; one 12th day of September, 1839, for three hundred and fifteen dollars for note on Thomas Hall—certificate 1st day of October, 1849, and a mortgage bearing date 14th day of July 1840, on a negro woman Martha, to secure note for seven hundred dollars; also, a promissory note on Thomas Hall for one thousand six hundred and sixty-one dollars and forty-two cents, dated 11th May, 1841, and secured mortgage on real estate, copies of all which are hereto appended and incorporated in the brief of testimony.

Counsel for defendant then read in evidence the depositions of Hartwell H. Tarver to interrogatories, and introduced as witness for defendant, Thomas P. Smith and Drury W. Ledbetter, whose evidence is stated in brief of oral testimony.

2d. Counsel for defendant then closed ; and the case being closed on both sides, the Court charged the jury that the bill and answer in equity causes, served the purpose of both pleading and evidence, and that the allegations of the bill not denied by the answer were to be taken as true ; to which charge counsel for defendant excepted.

*Charges given on the request of Keaton's counsel.*

3d. Counsel for defendant requested the Court in writing to charge the jury, that when the *cestui que trust* is under no legal disability, and competent to act for himself, and is him-

self the party creating or confering the trust, he is competent to release or discharge the trust. And if such a *cestui que trust* execute a receipt in full, it is evidence of a settlement, and the burden of showing such settlement to have been produced by fraud or undue influence, is upon the party attacking it. The Court so charged, but qualified said charge to the jury, that before a receipt so given could shift the burden of proof, it must appear to have been given on a full and fair settlement, if suspicion have attached to the transaction; to which charge and refusal to charge, counsel for defendant excepted.

4th. Counsel for defendant farther requested the Court in writing to charge the jury, that if the defendant in his answer denied receiving the money, notes and cotton upon the trusts charged in complainant's bill, such denial was responsive to the bill, and was evidence for the defendant equal to the testimony of two witnesses or one witness with corroborating circumstances. The Court so charged, but qualified said charge as requested, and charged the jury that such denial was responsive to the bill, and to be taken as evidence in the manner stated, unless the trust was admitted in other portions of the answer; to which charge and refusal to charge, counsel for defendant excepted.

5th. Counsel for defendant requested the Court in writing to charge the jury, that though the relation of trustee and *cestui que trust* may have existed between the parties, yet if the jury believed from the evidence that the defendant had disavowed the trust from September, 1839, and denied owing complainant any thing, and she had knowledge of such denial, it is a good bar in equity to her right of recovery, on the ground of lapse of time. The Court so charged, and by way of qualification of said request, charged that the disavowal in September 1839, must have been upon a full and fair settlement to constitute a starting point for the securing of the statute of limitations; to which charge and refusal to charge, counsel for defendant excepted.

6th. Counsel for defendant farther requested the Court in writing to charge the jury, that complainant having by her bill repudiated the deed executed by defendant to complainant in 1839, and alleged in her bill that said deed was made for a purpose foreign to the alleged trust; she is concluded by her pleadings from relying upon said deed as a continuation of said alleged trust. The Court refused to charge, and counsel for defendant excepted.

7th. Counsel for defendant farther requested the Court in writing to charge the jury, that if they believed from the evidence that the deed of defendant to complainant was made for the purpose, (and so stated by the parties, of a settlement of the original trust, said deed cannot be relied upon as a continuation of said original trust. The Court refused so to charge, and counsel for defendant excepted.

8th. Counsel for defendant farther requested the Court in writing, to charge the jury, that if they believed from the evidence, that complainant received from defendant the proceeds of Lot No. 142, in the second district, sold to Hartwell H. Tarver in 1844, and dealt with the other lands subsequent to that time, as her own, such acts amount to a recognition and ratification by her of the settlement made in 1839, and throws the burden upon complainant of showing that in so doing she acted in ignorance of her rights. The Court refused so to charge, and counsel for defendant excepted.

### Charges given on the request of McGwier's counsel.

9. Counsel for complainant requested the Court in writing, to charge the Jury, that if they were satisfied the relation of trustee existed at first between the parties, and were also satisfied that when the deed was made in September 1839 and the receipt then taken, it was not intended as a settlement, and was not an actual settlement between the parties of the original fund, then so far as these acts are concerned they do not disturb or bring to a close that relation. Which charge

the Court gave as requested, and counsel for defendant excepted.

10th. Counsel for complainant farther requested the Court in writing to charge the Jury, that if they believed said deed and receipt in Sept. 1839 were intended as a settlement in any respect and to any extent, and that the relation of trustee and *cestui que trust* was then existing and that the amount then due by Keaton of the trust fund, was $7,500, and that there was any fraud, concealment or advantage taken by Keaton in his character as trustee, the Jury may disregard and set aside said settlement. Which charge the Court gave as requested, and counsel for defendant excepted.

11th. The Court farther charged the Jury as a proposition applicable to this case, that in settlements between trustee and *cestui que trust* which are attacked or impeached for fraud, or not being a *bona fide* settlement, the weight is upon the trustee to show the fairness of the settlement. To which charge counsel for defendant excepted.

12th. Counsel for complainant requested the Court to charge the jury, that if they believed that the settlement as contained in the deed was not a *bona fide* settlement, but was nevertheless intended by Keaton and not by Mrs. Greenwood to represent the original trust fund, and that Keaton went on and undertook and did sell any part of said lands as Mrs. Greenwood's agent, and as he would sell, would by himself or by his directions, have the numbers so sold stricken from the deed, that these acts continued and kept in existence the original trust. Which charge the Court gave as requested, and counsel for defendant excepted.

13th. Counsel for complainant farther requested the Court to charge the jury, that if they believed when the receipt on the back of the deed of November 1844 was given by Mrs. Greenwood, that it relates entirely to the money for the sale of the lands, that such a receipt does not end the trust, and what the proof shows the land brought and was by Keaton paid over to Mrs. Greenwood he is entitled to a credit for on

the trust fund.    Which charge the Court gave as requested, and counsel for defendant excepted.

14th.  Counsel for complainant farther requested the Court to charge the jury, that if they believed the relation of trustee and *cestui que trust* existed at the making of the deed in September, 1839, and that the trust fund then held by Keaton for Mrs. Greenwood amounted to $7,500, and if the jury believe, from the answer of defendant setting forth his acts touching said deed from first to last that, at the time he first made it, he intended it only as a security for the trust fund, then the jury may regard said deed as written evidence under seal of the  trust.    Which said charge the Court gave as requested, and counsel for defendant excepted.

15th.  Counsel for complainant farther requested the Court to charge the jury, that in Courts of Equity statutes of limitation do not  obtain, but it is in the discretion of a  Court of Equity to  act by analogy and apply the same  statutory bar that would exist in  a Court of law, that how this discretion is to be exercised  must depend upon  the circumstances of each particular case, and these circumstances are mainly the nature of the transaction, the time that has elapsed if unnecessarily long,  and the impossibilities to get evidence from the lapse of time.    Which charge the Court gave as requested, adding at the conclusion  of said charge, the words " as already charged"—[See  charge as incorporated in grounds for new trial]—and counsel for defendant excepted.

16th.  The Court farther charged the  jury as requested by complainant's counsel, that if they believed from  the evidence that the trust once existed and that any portion of the trust fund was still in the hands of defendant at the time of filing said bill, or within four years of the filing of the same, that the original trust still exists, and is not barred by the statute of limitation—that it matters not in what shape the fund may exist, whether money or land, it is the same, if the proceeds of the original trust fund.    To which charge as given, counsel for defendant excepted.

17th. The Court farther charged the jury as requested by counsel for complainant, that if they believed from the evidence that the trust continued after the deed and receipt of 1839, then the receipt on the back of the deed does not constitute a point at which the statute of limitations will begin to run against the original trust, as defendant only pleads it as a bar to the investigation concerning the sales of lands. To which charge as given, counsel for defendant excepted.

18th. The Court farther charged the jury as requested by complainants counsel, that if they believed the deed to the lands was made merely to secure the trust fund, or to deceive the public, and was in fact not a settlement, or if they believe the value of the lands was grossly overrated by defendant to complainant, and that she was induced to accept them as a settlement by her confidence in him and his power over her, and that he did not deal fairly and *bona fide* with her, then it was not such a settlement as will protect the defendant under the statute of limitations. To which charge as given, counsel for defendant excepted.

19th. The jury returned a verdict for complainant; whereupon, counsel for defendant, during the said term and before the adjournment thereof, moved for a new trial in said cause, on the grounds of error in the several rulings and decisions of the Court as aforesaid, and upon the additional grounds that the jury found contrary to equity and contrary to evidence; which motion was overruled by the Court, and counsel for defendant excepted.

And counsel for defendant, on this the 19th day of June, 1857, being within thirty days from the adjournment of the said term of said Court, tenders his bill of exceptions, and says that the Court erred in the several rulings and decisions aforesaid.

And as the facts aforesaid do not appear of record, the defendant by his counsel prays that his bill of exceptions may

be signed and certified as required by the statute in such cases made and provided.

WARREN & WARREN; P. J. STROZIER and W. M. SLAUGH-TER, for plaintiff in error.

LYON & CLARKE; and VASON & DAVIS, *contra*.

*By the Court.*—BENNING, J. delivering the opinion.

Was the testimony of Mrs. Jeffries admissible? The Court below held that it was not.

The testimony of Mr. Jeffries, her husband, had been read by the complainant; and the only effect the testimony of Mrs. Jeffries, offered by the defendant, could have had, would have been, to discredit Mr. Jeffries.

[1.] This being so, the testimony of Mrs. Jeffries, was, according to *Rex vs. Cloviger, (2 T. R. 263;)* and *Stein vs. Bowman et al. (13 Pet.* 218,) not admissible. This Court will follow these cases, and affirm the judgment of the Court below; but I must say, that it will do this, so far as I am concerned, with extreme reluctance and dissatisfaction. See *Rex vs. Bathwick, (2 B. & Ad.* 630, 647 ;) *Rex vs. All Saints, (6 M. & S.* 194 ;) 1 *Green. Ev.* § 342, § 254, and cases cited. I am, still open to argument on the point.

The Court told the jury, "that the allegations of the bill, not denied by the answer, were to be taken as true."

In this, the Court, we think, was wrong,—even if there had been no answer at all, and the bill had been taken as confessed, the plaintiff would not have had the right to use the bill as evidence, until he had filed his own affidavit "of what, he" might "know or believe, the defendant could, or ought to answer." 1 *Eq. Rule,* 2 *Kel.* 481. It cannot be, that the defendant injures his condition in this respect, by putting in an answer, and one so full, that it is not excepted to.

The Judiciary Act of 1799, seems to contemplate, that

"the facts in the" "bill," have to be "taken *pro confesso*," before they can be used as evidence, in obtaining a decree. *Pr. Dig.* 447.

I do not know of any English authority, that goes further than this, that if a defendant answers, that he *believes* a statement in the bill to be true, the Court will treat the statement as true. And there is other authority saying, that even this is going too far. *Potter vs. Potter*, 3 *Atk*, 719 ; . *Hill vs. Binney*, 6 *Ves*. 738 ; *Hood vs. Pymm*, 4 *Sim*. 101. In this last case, the bill alleged a will; the answer was silent as to this allegation; at the hearing, no proof of the will was made; the Court, for the want of this proof, dismissed the bill.

"A mere statement, however, in an answer, that a defendant has been informed, that a fact is as stated, without an answer as to his belief concerning it, will not be such an admission as can be read as evidence of the fact." 2 *Danl. Ch. Pr.* 402.

It seems that there are some American cases that recognize a different rule. What authority they have for doing so, I am not aware of. 3 *Green Ev.* § 276, *and cases cited*.

[2.] We think, that this charge was erroneous.

### Charges given on the requests of Keaton's counsel.

It is not perfectly clear, what the Court meant, by the qualification it gave to the first of these requests. We think the whole charge would have been better, if it had been something to this effect; that a receipt in full given by even a *cestui que trust*, to his trustee, is *prima facie* evidence of a settlement between them, and throws on the *cestui que trust*, the burden of showing the receipt to have been obtained by fraud, by undue influence, (a thing easily growing out of such a relation as that of trustee and *cestui que trust*,) or to have been obtained in some other improper way ; but that, when the case is one brought by a *cestui que trust* against a trustee, less evidence is needed to show the receipt to have been

thus obtained, than is needed, when the case is one between persons not occupying toward each other, such a relation.

If a receipt in full is not sufficient to cast the onus, it is a thing not worth taking; for that is the least effect it can have. And to say that a receipt in full, when given by a *cestui que trust* to his trustee, is to have *no* effect, is to say that the former is not *competent* to give to the latter such a receipt.

The qualification given to the second of these requests, was, no doubt, right, if the facts were such as to authorize it.

The Counsel for McGwier insist, that certain parts of the answer, by implication, admit the trust as alleged in the bill; especially the part of the answer in which Keaton says, to her, that if " he took the notes on condition that he would manage them for her, it would not change their relations," &c. This the counsel for Keaton, deny. The issue is one, that may be settled by an amendment to the answer, stating more fully what the defendant meant by these expressions.

I doubt, myself, whether the expressions, as they stand, are susceptible of the construction put upon them, by Mc-Gwier's counsel. If the evidence of Jeffries is true, the talk between Keaton and Mrs. Greenwood, about these notes, was intended by secret preconcert, for a very different purpose.

The qualification to the third of these requests, was, we think, erroneous.

It is, generally, true, that if the trustee disavows the trust, and such disavowal is known to the *cestui que trust*, the statute of limitations begins to run in favor of the trustee. This principle applies, not only where there has been a "full and fair settlement"; but even where, there has been no settlement at all. It must apply, then, where there has been some settlement, even one not "full and fair."

[3.] An exception to the rule, is, where the *cestui que trust* labors under an undue influence proceeding from the trustee. A qualification of the request, to the following effect, would therefore, have been proper, viz: That if Keaton, at

the time of such disavowal, had over Mrs. Greenwood, such an undue influence, that it operated to deter or prevent her, from asserting her rights against him, by suit, then the statute did not begin to run against her, until the cessation of that influence. *Percel vs. McNamara,* 14 *Ves,* 91; 9 *Ves.* 292; *Lady Ormand vs. Hutchinson,* 13 *Ves.* 47; *Wood vs. Downs,* 18 *Ves.* 120; *Taylor and others vs. Obee,* 3 *Price,* 83.

Something further on this point hereafter.

The fourth of these requests, was, "that complainant by her bill, having repudiated the deed executed by defendant to complainant in 1839, and alleged in her bill, that said deed was made for a purpose foreign to the alleged trust; she is concluded by her pleadings from relying on said deed, as a continuation of said alleged trust." This request the Court refused.

There are allegations in the bill, which amount to this,— that the deed was made by Keaton to Mrs. Greenwood, exclusively to serve his own purpose, viz: to save the land contained in the deed, from the *crim. con.* suit of her husband against him, Keaton; and that she never accepted, or claimed, the land as her own.

These allegations are denied by the answer. They are not proved by any witness. A different thing from what they import, is proved by a witness, Jeffries. He proves, that "Keaton said to Mrs. Greenwood, that her husband had sued him, and he feared would ruin him, and he was anxious to secure her, in case he was ruined, and that he would turn over to her these lands, mentioned in the deed." This seems to be as much as to say, that the lands were turned over to Mrs. Greenwood, by Keaton, not to save them from the *crim. con.* suit, as *she* said they were; nor, to pay her, what he owed her, as *he* said they were; but, to secure her in what he owed her; she pleads one thing; he pleads another thing; the witness proves a third thing. This third thing is such, that it might be evidence of a continuation of the trust, if there was a trust.

Now, the pleadings being such as they were, could she avail herself of this proof, and make this third thing, though out of the record, a part of her case?

[4.] "It is not only necessary that the substance of the case made by each party, should be proved, but *it must be substantially the same case as that which he has stated upon the record;* for the Court will not allow a party to be taken by surprise by a case proved on the other side, different from that set up by him in the pleadings." 2 *Dan. Ch. Pr.* 419.

This position is, no doubt true; it is well supported by authorities. See *Lindsay vs. Lynch,* 2 *Sch. & Lef.* 1, and the other cases cited by *Daniel.*

Even if this third thing appeared in the *answer,* it would be doubtful whether the complainant could avail himself of it, without having first amended his bill by adopting the thing, as a part of his case. 2 *Dan'l Ch. Pr.* 419, 420; 1 *do.* 513; *Stor. Eq. Pl.* §§ 264, 394 *n.* 1; 1 *Russ.* 359; *Mit. Eq.* 39.

We think, then, that, as the bill stood, this fourth request was a proper one; and, therefore that the Court, in rejecting it, erred.

The bill, however, is amendable; and the complainant may adopt this third thing as a part of his case, if he chooses to do so.

We think, that the Court should have given in charge, the *fifth* of these requests. The proposition contained in it seems to me, to be self-evident.

It is not meant to be said, that the deed may not be used as evidence, on the question of fraud, or that of undue influence, in what took place at the time when the deed was made.

The *sixth* of these requests required, as we think, modification—a modification which would have made it, substantially as follows; that if Mrs. Greenwood received from Keaton, the proceeds of the sale of lot No. 142, sold to Tarver in 1844, and subsequently to that time, dealt with the other lands as her own; these acts, if they were done freely, and

not in consequence of an undue influence proceeding from Keaton, were acts in recognition, and ratification, of the settlement made in 1839; and, therefore, were acts which cast upon her, the burden of showing something to annul this effect of theirs; as, that they were done by her in ignorance of her rights, or through some mistake; or by the fraud of Keaton.

Whether there was undue influence, ignorance, mistake, fraud, or any thing else, to neutralize these acts, were questions for the jury. But the acts, if left without neutralization, were such, that they amounted to a recognition and ratification of the receipt of 1839, as a settlement, by Mrs. Greenwood. This I think, must be clear. The pleadings being as they are, how else are acts treating the land as her own to be accounted for? If the bill had said, (in accordance with Jeffries' testimony,) that the object of the deed of 1839, was, to *secure* Mrs. Greenwood, the case might be different.

### Charges given on the requests of McGwier's counsel.

The propositions contained in the *first* and *second* of these requests, seem to us, to be true. These propositions were not denied before us by Keaton's counsel.

In connection with these propositions, (as it seems,) the Court told the jury, "that in settlements between trustee and *cestui que trust*, which are attacked, or impeached, for fraud, or, not being a *bona fide* settlement, the weight is upon the trustee, to show the fairness of the settlement."

We understand the Court to mean by, "*attacked or impeached*," attacked or impeached by *pleading*—by mere *allegations* in the bill—not attacked or impeached, by *proof.* See charge preceding any request. And taking this to be the meaning of the Court, we think, that the Court erred in this charge.

To say, that a receipt in full, given by the *cestui que trust* to the trustee, does not avail even to cast on the *cestui que*

*trust* the burden of showing, that he did not receive all that he was entitled to, is to say, that such a receipt between such parties is *worthless*, is to encourage trustees to hold back the trust fund, until it is forced out of them by suit. *(Supra.)*

[5.] We think, that a receipt in full, given by a *cestui que trust* to his trustee, is *prima facie* evidence of a settlement in full between them; and, consequently, that such a receipt casts upon the *cestui que trust*, the burden of making some *proof*, that there was not a settlement in full between them.

Of course this must be taken, as referring to the case in which the *cestui que trust* acts freely and not under an undue influence of any sort, proceeding from the trustee.

The third of the complainant's requests was, as we think, not authorized by the *pleadings*. There is no statement in the bill, or in the answer, to the effect—" that the settlement as contained in the deed, was not a *bona fide* settlement, but was nevertheless intended by Keaton, and not, by Mrs. Greenwood, to represent the original trust fund." See above point, &c.

The fourth of these requests, when confined to the case made by the bill, was not amiss. That case was, that Mrs. Greenwood had entrusted $8,000 to Keaton, to be managed by him for her, and, sometime afterwards, had taken from him a deed conveying to her some of his lands, not in payment of, or security for this sum, but to save the land from a *crim. con.* suit of her husband against him. Here was a trust, and one with which the deed had no connection. The receipt, (or rather certificate, perhaps,) was as follows:

" GEORGIA, BAKER COUNTY: This is to certify, that the within numbers in this deed that is marked out, has been sold by B. O. Keaton for me, and the proceeds turned over to me, by him, the said B. O. Keaton, this the 2d day of November, 1844.                    E. M. M. GREENWOOD.

*Test :* JAMES JEFFRIES."

Keaton vs. McGwier, adm'r.

The date of the deed was the 12th of September, 1839. There does not seem to be anything in such a receipt, to cause the receipt itself, to end the trust, however much there may be in it, tending to show, that a thing other than the receipt, had *already* ended the trust, namely,—the deed.

The case made by the testimony of Jeffries, was different. According to that, the deed was made, to secure the payment of the trust funds to Mrs. Greenwood. The receipt shows, that Mrs. Greenwood got the money arising from the sale of a part of the lands contained in the deed. To the extent to which this money went—the trust was extinguished. According to *this* case, then, we may say, that the receipt *partially* ended the trust.

The fifth of these requests was erroneous, whether we take the case made by the bill, or the case made by the answer.

According to the bill, Keaton, (as well as Mrs. Greenwood,) intended the deed only as a means of saving his land from the *crim. con.* suit. According to the *bill*, then, it could not be true, that he "intended it, only as a security for the trust fund."

According to the answer, the deed, together with a negro girl, and a gray mare, was given by Keaton to Mrs. Greenwood, and was accepted from him, by her, as "a full, fair, complete, final, and *bona fide* settlement of all monied transactions, debts of whatever kind, or nature; and a surrender of all fiduciary relations of whatever character or name, before that time existing; and that it was so understood by the complainant and defendant."

It is true that, McGwier's counsel say, that a part of Keaton's answer admits, by implication, that there was *originally* a trust; but I am confident, that it cannot be said, that this, or any other part, of the answer, admits by implication, that a trust *continued to exist after the making of the deed.* This part of the answer has been referred to above.

According to the *answer*, then, it, equally, is not true, that

Keaton "intended" the deed "only as a security for the trust fund." And even if there was, in the answer, but not in the bill, a statement to the effect, that Keaton intended the deed only as a security for the trust fund, it would be extremely doubtful, whether the complainant could avail himself of the statement. See point 4.

To make such a request as this proper, it will be necessary to amend the bill, by stating, that Keaton "intended" the deed "only as a security for the trust fund." See above point 4.

[6.] The sixth of these requests went, we think, too far. Statutes of limitation *do* obtain in a Court of Equity; and, to the extent to which they so obtain, a Court of Equity, has no discretion to dispense with them, but is *bound* by them. True, it is said, that a Court of Equity "acts by analogy," to these statutes. (1 *Stor. Eq. Jur.* § 64 *a*.) But this must mean, that a Court of Equity is *bound* so to act, whenever a proper case arises.

In a Court of Equity, however, these statutes are not allowed to extend to every case, to which they extend in a Court of Law. In a Court of Equity, they are not allowed to extend to cases of fraud whilst the fraud remains undiscovered; or, to cases in which, the injured party lives under an influence proceeding from the other party, which is so great as to be "undue." I do not know of any rule which defines, what is the amount of this influence, that it takes to make the influence undue. I suppose, however, that we may safely say this much, that if the amount is so great as to make the injured party rather forego exacting his rights, than, by exacting them, run the risk of displeasing the injuring party, the amount is undue. But a proposition of this sort is, if true, so difficult of application, that it can hardly be of much practical value.

The Court, we think, should not have granted this request in its full extent.

The seventh of these requests was too absolute.

Keaton vs. McGwier, adm'r.

Suppose it true, that there was a trust, and that Keaton still held "a portion of the trust fund," yet if it was also true, that he had held this portion for as much as four years next before the suit, adversely to Mrs. Greenwood, and had done so to her knowledge; that for the same period, his undue influence over her, (if he ever had any,) had ceased; that for the same period, the fraud, if any, by which he had obtained the fund, or managed to keep it, had been known to her,—then, still, the suit would be barred by the statute of limitations.

These qualifications should have been added to the charge, as we think.

As to the eighth of these requests.

The "receipt on the back of the deed," is "pleaded," without restriction as to the use to be made of it. The party pleading it, Keaton, may, therefore, put it to any use to which it may be adapted. Indeed the bill does not ask for any "investigation concerning the sales of the lands," contained in the deed. How then could it be true, that anything could be pleaded only in bar to such an investigation? Therefore there is nothing, *in the manner in which the receipt is pleaded*, to prevent it from being—"a point of time at which the statute of limitations" began to run in Keaton's favor.

It is no doubt true, that if the case was such as the *bill* makes it out to be, the receipt did "not constitute a point at which, the statute" began to run in Keaton's favor. According to the bill, the receipt was a thing that could not relate to the trust, for according to the bill, the lands were conveyed by the deed to Mrs. Greenwood, for a purpose quite different from any connected with the trust; and the receipt is merely as to the proceeds of the sales of some of the lands conveyed by the deed.

This charge, then, we think needed modification. It is not supported by the reason assigned for it.

As to the ninth and last of these requests:

First, there is nothing in the bill, or in the answer, to au-

thorize the part of this request, in these words,—" if they believed the deed to the lands was made merely to secure the trust fund."

Secondly: The rest of the charge was too absolute. It might properly have been to this effect—that if the settlement was to deceive the public, and thereby save Keaton's lands from the *crim. con.* suit—was in fact not a settlement, then it was a thing that could not affect the operation of the statute of limitations, on the trust as stated by the bill; that even if the settlement was intended as a settlement, yet if it was procured by fraud, or by undue influence, in Keaton, the statute did not begin to run until the discovery of the fraud, or the cessation of the influence.

So much for the charges of the Court.

There was a motion for a new trial. The exceptions already considered, made a part of the grounds taken in that motion. Of the others of those grounds, all but two were abandoned. Of these two, one was, that the verdict was contrary to equity; the other, that the verdict was contrary to the evidence. The two may both be resolved into the last. And as to the last, we deem it inexpedient to express an opinion.

New trial granted.