GREEN *et al. vs.* JUHAN, surviving partner. ·

Where the agent of the payee of a note to collect it was authorized by the maker and surety thereon to make an entry of a credit in which they were jointly interested, and did so at the instance and in the presence of both, it was such a new promise as would prevent the bar of the statute from attaching.

CRAWFORD, Justice, dissented.

Statute of limitations. New promise. Promissory notes. Principal and agent. Principal and surety. Before Judge LAWSON. Jones Superior Court. October Term, 1880.

Juhan, as surviving partner of Juhan & Clower, brought suit to the October term, 1879, of Jones superior co rt, in the ordinary form of complaint, against William M Green and John C. Green, on a note made by them, dated March 24th, 1873, and due one day after date, for $814.35, payable to Juhan & Clower, or bearer. The declaration was filed in the clerk's office of the superior court September 30th, 1879. The note sued on was indorsed with the following credits:

" Received on the within note, fifty dollars, from J. A. Green, February 9th, 1874."

" Received on the within note, one hundred dollars, May 18th, 1874."

" Received on within note, one hundred and seventy-seven dollars and fifty cents, February 1st, 1875."

None of said receipts were subscribed by any one.

To this suit the defendant, William M. Green, filed

no plea. The other defendant, John C. Green, filed the following pleas:

(1.) General issue. (2.) The statute of limitations. (3.) That he was only a surety on the note.

The last credit alone was relied upon as preventing the bar of the statute as to this defendant. The circumstances so relied on are detailed by Chiles, a witness for the plaintiff, as follows:

" I put the last credit on the note ; some time in March, 1878, went out as agent of Juhan & Clower to see Mr. John C. Green about this note and an unpaid account due the store : talking about this note, John C. Green asked me if there was a credit for the purchase of a mule on the note ; both defendants came to Clinton, and Colonel Hamilton remarked that Mr. Clower said that the price of the mule was $175.00 ; Wiliam M. Green said it was $177.00, and we agreed that the credit for the mule debt should bear date in 1875, and the credit of this much was ordered put there by both William M. Green and John C. Green, and the understanding was that John C. Green was to give his note for his own open account. The credit was for a mule sold to Mr. Clower by William M. Green, in which John C. Green had an interest. The conversation was upon the time when the mule debt ought to be credited. I was acting for Juhan & Clower. I think John C. Green was looking over my shoulder when I entered the credit."

Chiles was corroborated by two other witnesses, while both of the Greens testified that John C. Green was a mere security on the note, and denied that he authorized the entry of the credit, but asserted that William M. Green caused it to be put there.

The jury found for the plaintiff. Defendants moved for a new trial on the following among other grounds :

(1). Because the verdict is contrary to law and the evidence.

(2). Because the court erred in refusing to give the following charge to the jury as requested : " If the jury

believe from the evidence that Samuel L. Chiles was the agent of Juhan & Clower, and that he put the credit on the note while acting as such agent, then it was a credit put there by the holder of the note and does not bind John C. Green."

The motion was overruled and defendants excepted.

ISAAC HARDEMAN; HILL & HARRIS, for plaintiffs in error.

RICHARD JOHNSON; HARRISON & PEEPLES, for defendant.

JACKSON, Chief Justice.

This suit was brought on a promissory note against William M. and John C. Green. John C. filed a plea to the effect that he was only surety, and that the note as to him was barred by the statute of limitations. If he made no new promise in writing, or did anything equivalent thereto under the law, as the note had been due on its face more than six years, the statute barred the suit as to him, no matter what William M. Green had done to renew the promise. Code, §2938. The question then is, what did he, John C. Green, do to renew the vitality of the note, and is it sufficient, under the law, to bind him?

The testimony is conflicting, but there is testimony clearly to the point that he himself requested one Chiles to put a credit of $175.00 on the note; that Chiles went out to see him about this note and an unpaid account he owed the store; that he, John C., asked about a credit for a mule which ought to be on the note. It was not on it, and both the Greens ordered Chiles to put it on. John C., as well as William M., had an interest in the mule. Chiles went to see about the note and the unpaid account, acting for the holders of the note, and the conversation was about the proper time to make the credit bear date, and the date was agreed on as in 1875 and so put on the

note, and John C. Green then gave his own note for the account. The Greens denied these facts, but they were sworn to by Chiles and corroborated in essential parts by Hamilton and Greaves. There is evidence, then, that John C. Green directed Chiles to put the credit on the note for a mule, in which he had an interest, and agreed to the time it should bear date, and thereupon settled by another note an account overdue to the payees of the note sued on.

The question is, does this act of his bind him by a valid new promise, or what is equivalent thereto, in writing, so as to lift the bar of the statute and make the note valid against him? Section 2935 of the Code declares that "a payment entered upon a written evidence of a debt by the debtor, or any other written acknowledgement of the existing liability, is equivalent to a new promise to pay." This payment was entered on this note by Chiles, in the presence and by direction of John C. Green, as the value of a mule in which he had an interest, and which had previously been sold and delivered to the payees. If he had entered the credit on this written evidence of debt himself it would most clearly have bound him. What difference does it make that another, by his direction and in his presence, made the entry?

The Code declares that "whatever one may do himself may be done by an agent, except such personal trusts in which special confidence is placed in the skill, discretion or judgment of the person called on to act; so an agent may not delegate his authority to another unless specially empowered so to do." Code, §2179. Therefore, if he could make the entry himself, and that act bound him, he could make it by an agent and bind himself thereby.

Especially where the agent does the mere manual act of making the entry in his immediate presence. If this were not so, no man who was so unfortunate or illiterate as not to be able to write could ever make the entry.

This view is fortified by the section of the Code which

precedes that first quoted, 2934, which declares that the new promise, if not on the evidence of debt, "must be in writing, either in the party's own handwriting, or subscribed by him, or some one authorized by him." He may sign a new promise on any thing himself or get another to do so, and this will bind him. So that if there be danger of parol evidence to show authority where he makes the entry on the note by another, there is equal danger where he authorizes another to sign his name to a new promise. The authority of the agent is shown by parol testimony in the one as in the other case.

That an agent may do this is also shown by the judgment of this court in 62 *Ga.*, 639, where it is held that the payee or creditor could not be the agent to make the entry, thereby implying that one wholly disinterested, or not standing in the relation of creditor, could be the agent to make the entry. So in 55 *Ga.*, 187, it is ruled distinctly that the creditor could not testify that he put the credit on the note as agent of the dead maker of it, the maker being dead ; and that, even if he could testify to the fact, he could not legally have put it there, because he could not be the maker's agent for the purpose of putting the credit there—thereby necessarily implying that a person other than the creditor might be the agent of the maker to put the credit on the note, and to do exactly what Chiles did for John C. Green.

But it is objected that Chiles was agent for the payee or creditor to collect the note or have it revived, and therefore could not be the agent of John C. Green to put the credit on the note. Why not? One may be an agent for both parties. It is often the case. Chiles had no interest in the note, and what he did was in the presence of the two Greens and of other witnesses. If he was agent of the payees to collect, he became afterwards the agent of John C. Green to put a credit on the note, which he not only authorized and ordered to be done, but, on its being done, settled another account of the same creditors by giving another

note. It was not as agent of the creditor but of this debtor that he put this credit on this note. It was by his order and in his presence.

The verdict and judgment are therefore right, and the court did not err in overruling the motion for a new trial.

Judgment affirmed.

SPEER, Justice, concurred, but furnished no written opinion.

CRAWFORD, Justice, dissenting.

I cannot concur in the judgment of the court in this case, because I know of but two ways by which a note barred by the statute of limitations may be relieved of that bar. One is by a payment entered on the note by the debtor himself, the other by a written acknowledgment of the existing liability.

In this case neither has been done, but the credit on the note is relied upon as being equivalent to a new promise to pay, because it is said that it was put there by the authority of the maker. That this is not what the law says must be done, might be perhaps a sufficient answer to such a proposition. Admitting, however, that this may be done by some other than the debtor, still the question comes, who may enter it? This court has ruled that the creditor cannot. If, therefore, the creditor cannot do it himself, how can he deliver it to another, with the right to exercise a power higher than his own? Or how can he appoint an agent to do that which he could not do himself?

In this case the credit was entered by the clerk, in the office of the store. His possession of the note was the possession of his principal, his acts were the acts of his principal, his entry upon the note was the entry of his principal, and could be no more. To say that the debtor told him to do this, gives it no more legal effect than if he

had told the creditor, whom he represented, to do the same thing.

If a credit put upon a note by the clerk, collector, or agent of the owner of the promissory note, is to be equivalent to a new promise to pay, upon his testifying that the debtor told him to enter it, then it seems to me that the statute is not only meaningless, but utterly worthless; for there probably never was such a payment made without such direction given. Whenever the law directs a thing to be done in a particular way, it should be done exactly in that way and in none other. See cited for plaintiff in error, Code, §§2934, 2935; Acts 1855–6, p. 238; 34 *Ga.*, 245; 36 *Id.*, 538; 55 *Id.*, 187; 62 *Id.*, 639, 420; Code, §2182.