MOORE, administrator, *v.* MOORE, administrator.

1. This case, in so far as the questions made relate to the attaching of the bar of the statute of limitations, is controlled by the decision of this court in *Black* v. *Holland*, 102 *Ga.* 523, which, upon a review thereof, is affirmed.
2. The statutes relating to the limitation of actions being expressly made applicable to courts of equity, those courts will not, where the bar of the statute has attached, remove the same merely because of a mutual mistake of law of the parties as to the legal sufficiency of a credit entered upon an evidence of debt to constitute a new promise from the date of which the statute would begin to run.

Argued February 10, — Decided March 4, 1898.

Equitable petition. Before Judge Hart. Taliaferro superior court. August term, 1897.

*Samuel H. Sibley*, for plaintiff.
*Thomas E. Watson* and *Horace M. Holden*, for defendant.

LITTLE, J.   On March 28, 1887, D. A. Moore executed a promissory note for $415.79, payable one day after date, to J. P. Moore, or bearer, administrator of the estate of Enos Moore, deceased.   Upon this note the following entries of credits appeared:  "Received on the within note four dollars and 70/100, August 17th, 1892."  "Received on the within note six hundred pounds old iron, at 2 cts., $12.00, November 1st, 1893."

On January 21, 1897, J. P. Moore, as administrator of Enos Moore, filed an equitable petition against Jesse Moore Jr., as administrator of the estate of D. A. Moore, deceased, in which he alleged the execution by D. A. Moore of the note above set out; and further alleged that the note was not barred by the statute of limitations, because the credit thereon of $4.70 was made by Tillman Moore, acting as agent of D. A. Moore, the maker, by his direction and in his presence, and constituted a new period from which the statute should run; that if said credit was insufficient for this effect, the plaintiff was notwithstanding entitled to the relief prayed, by reason of the facts stated below. The making of said entry of credit occurred under the following circumstances:   Plaintiff required D. A. Moore to renew or pay the note, because it was about to become barred; said Moore stated that he had nothing with which to pay, but that he would renew the same by making a credit on the note of an amount due to him, saying that that would be sufficient to renew the note and make it as good as a new note.   D. A. Moore then handed said Tillman Moore the note and asked him to make the entry, and dictated the same, with the common intention and belief that it would relieve against the bar of the statute; and plaintiff relied upon the entry and the statement of its sufficiency, and made no further effort to collect the note until it became, as contended by defendant, barred.   At the time the entry was made, both plaintiff and D. A. Moore believed that the effect would be to relieve the bar of the statute, and had it made on the note for that purpose; and the same was an honest mistake concurred in by both the parties as to the effect of the writing, and operates to inflict gross injustice on the plaintiff and gives an unconscientious advantage to the other side.   The consideration of the note was for money ac-

tually borrowed of the plaintiff as administrator by D. A. Moore. Had D. A. Moore or Tillman Moore signed the credit, the same would have been sufficient in law. Both of them and plaintiff intended the same to be a sufficient entry for that purpose, and through a mistake of law the same was not signed. It was also a case of a defective execution of a power vested in Tillman Moore, through a mistake as to the mode proper to its execution, and is remediable in equity. At the time of making this entry D. A. Moore assured plaintiff that its effect would be to renew the note as effectually as the giving of a new obligation, and plaintiff was ignorant of the contrary and relied upon said assurance until the note became barred. D. A. Moore also to the day of his death, and Jesse Moore Jr., who transacted the business of D. A. Moore as his agent, frequently admitted and recognized the validity of the note and promised to make payment upon the same, thereby lulling plaintiff into inactivity and preventing him from insisting upon having a new note which his brother, D. A. Moore, would at any time prior to his death have given. Wherefore it would be a fraud upon plaintiff to allow D. A. Moore, or his administrator, to controvert the truth of said assurance. Upon this state of facts, the plaintiff, waiving discovery, prayed that the entry be declared sufficient to prevent the bar of the statute; that, if necessary, the same be decreed to be reformed and re-executed so as to attain the intention of the parties, and that he have judgment against defendant, as administrator of D. A. Moore, for the amount due upon the note. Upon demurrer filed, the action was dismissed for the want of equity, and on account of the bar of the statute of limitations, and the plaintiff excepted.

By section 3767 of the Civil Code it is provided that all actions upon promissory notes, bills of exchange, or other simple contracts in writing, shall be brought within six years after the same become due and payable. It is declared also, in section 3788 of the Civil Code, that a new promise, in order to renew a right of action already barred, or to constitute a point from which the limitation shall commence running on a right of action not yet barred, must be in writing, either in the party's own handwriting, or sub-

scribed by him or some one authorized by him; and in section 3789 of that Code it is declared, that a payment entered upon a written evidence of debt by the debtor, or any other written acknowledgement of the existing liability, is equivalent to a new promise to pay. That the bar of the statute, under the facts of this case, tested by the above provisions of law, had attached to the note sued on, is clearly established by the decision of this court in the case of *Black* v. *Holland,* 102 *Ga.* 523, wherein it was ruled that: "A credit on a promissory note, in order to constitute a new point from which the statute of limitations will commence to run, must be in writing and signed by the maker or by some one by him authorized; or, if unsigned, such credit must be in the handwriting of the maker himself. An unsigned credit, written by an agent of the maker, will not suffice to renew the promise, or to constitute a new point from which the statute will run." On the argument here, however, counsel for plaintiff in error asked leave to review the case above cited, which was granted. The position of the plaintiff in error seems to be, first, that as a matter of law, the entry of credit in 1892 was sufficient to constitute a new point from which the statute would begin to run; and, second, that if the bar of the statute, in contemplation of law, had attached, the plaintiff was in equity entitled to the relief prayed. These respective contentions will be considered seriatim.

1. Formerly, any admission of a debt, or any promise to pay a debt, neutralized the effect of the statute of limitations on the debt; and as every partial payment of a debt implied an admission of the debt and a promise to pay the balance of the same, a partial payment had the effect to neutralize the effect of the statute of limitations upon the debt. *Holland* v. *Chaffin & Lane,* 22 *Ga.* 343. But by the act of February 20, 1854, which, however, was not published with the acts of the session to which it belongs and is to be found in the publication of the Acts of 1855–56, p. 238, it was provided: "That from and after the passage of this act, no promise, acknowledgement, or admission of a debt, made after the statute of limitations has commenced running, shall be sufficient to revive the same, un-

less such promise, acknowledgement, or admission shall be re-
duced to writings, or some note or memorandum thereof made
in writing, and subscribed by the person or persons making
the same, or some other person thereunto by him lawfully au-
thorized." The codifiers, departing somewhat from the exact
language of the statute, made use of, and embodied in sections
2875 and 2876 of the Code of 1863, the same language as is
now found in sections 3788 and 3789 of the Civil Code herein-
before quoted. Thus it will be seen that the code provisions
accept the debtor's own handwriting as a substitute for signing,
and recognize a credit entered by the debtor himself or any
other written acknowledgement of the existing liability, as
equivalent to an express promise. *Shumate* v. *Williams*, 34
*Ga.* 245.

In determining whether the ruling made in the case of *Black*
v. *Holland*, supra, is sound, it will be of practical utility to
note the construction given the statute by this court in adju-
dications arising upon various conditions of facts. In the case
of *Caldwell* v. *Ferrill*, 20 *Ga.* 94, where the plaintiff sought to
relieve the bar of the statute by a verbal acknowledgement on
the part of the defendant that he owed the note and agreed to
pay it, it was ruled that since the act of February 20, 1854,
all promises or acknowledgements relied on to remove the bar
of the statute of limitations must be in writing. Such was the
ruling also in the cases of *Holland* v. *Chaffin & Lane*, 22 *Ga.*
343 ; *Burns* v. *Harwell*, 32 *Ga.* 602 ; *Moseley* v. *Jenkins*, 65
*Ga.* 49. Also since the passage of that act, a partial payment
of a debt is insufficient to countervail the effect of the statute.
*Holland* v. *Chaffin & Lane*, 22 *Ga.* 343 ; *Shumate* v. *Williams*,
34 *Ga.* 245. In the case of *Green* v. *Hall*, 36 *Ga.* 538, where
a credit entered on the note and signed by the payee was relied
on, it was ruled that a credit entered on a promissory note in
part payment thereof, after the statute of limitations had com-
menced running, in order to form a new starting point from
which the statute would commence to run, must be subscribed
by the debtor, or by some other person by him lawfully au-
thorized. A similar ruling was made in the case of *Ryal* v. *Mor-
ris*, 68 *Ga.* 834 ; see also *Georgia Company* v. *Castleberry*, 43

*Ga.* 187; *George* v. *Gardner,* 49 *Ga.* 441. In the case of *Wright* v. *Bessman,* 55 *Ga.* 187, the court ruled, substantially in the language of the statute, that a new promise, to prevent the bar of the statute of limitations, must be in the handwriting of the maker, or subscribed by him, or some one authorized by him.

In the case of *Green* v. *Juhan,* 66 *Ga.* 531, it was ruled by two Justices, Justice Crawford dissenting, that: "Where the agent of the payee of a note to collect it was authorized by the maker [in parol] and surety thereon to make an entry of a credit in which they were jointly interested, and did so at the instance and in the presence of both, it was such a new promise as would prevent the bar of the statute from attaching." The ruling made in that case, however, was disapproved in the case of *Watkins* v. *Harris,* 83 *Ga.* 680. In the latter case it appeared that James Watkins in his lifetime executed to Harris a certain promissory note, that subsequently to his death certain credits were entered on the note under the orders and direction of his administratrix, and that the plaintiff relied upon these credits so made to relieve against the bar of the statute. In the opinion Chief Justice Bleckley says: "The Code [of 1882], §§ 2934, 2935, plainly intends that a new promise implied from a credit entered upon an evidence of debt shall count for nothing against the statute of limitations, unless it is the handwriting of the debtor, or, if the handwriting of another, signed by the debtor, or by some one duly authorized. On this question we agree with Mr. Justice Crawford, and differ with the majority of the court, in the case of *Green* v. *Juhan,* 66 *Ga.* 531. The evils of parol evidence, against which the code intended to guard, were realized in that very case. The parol evidence was conflicting, and so the new promise implied from the credit was not established by writing, but by the opinion of the jury upon the more or less credibility of the respective witnesses." In that case there is dictum to the effect that an unsigned entry by an agent might suffice, if his authority were proved by writing. This likely would be true, not by reason, however, of any inherent force of the unsigned entry, but by virtue of the fact that the writing itself would be such a written acknowledgement of the existing liability as would be equivalent to a new promise to pay. *Webb* v. *Carter,* 62 *Ga.* 415.

It was held in the case of *Foster* v. *Cochran*, 89 *Ga.* 466, that "a credit upon a promissory note, entered by a duly authorized agent of the maker, and signed by the agent in the name of the maker, will operate as a new promise under sections 2934, 2935 of the Code [of 1882], and the statute of limitations will run only from the date of such credit." It was further ruled in that case: "Inasmuch as an agent's authority to execute a promissory note in the name of his principal need not be in writing, the authority to renew or extend such note by a new promise need not be in writing, but may be created verbally and proved by parol evidence." While it is conceded that in some instances the act of an agent will be regarded as the act of the principal, especially where the principal is present and the act is done in his presence and by his direction, this principle can not be invoked as against the positive requirements of the statute now being considered. The provisions of section 3789 of the Civil Code, declaring that a payment entered upon an evidence of debt by the debtor is equivalent to a new promise to pay, mean by the debtor himself, and not by his agent. *Watkins* v. *Harris*, 83 *Ga.* 680, citing Hyde *v.* Johnson, 2 Bing. (N. C.) 776; Wood on Lim. 207. By the letter and policy of the statute, an unsigned credit is required to be in the handwriting of the debtor himself. The statute is not one of limitations. It is a law of evidence, having for its object the avoidance of the uncertainties to which parol evidence is exposed. *Watkins* v. *Harris*, 83 *Ga.* 680, citing *Shumate* v. *Williams*, 34 *Ga.* 245. By the language of the statute, the entry of credit must be either in the handwriting of the debtor himself, or, if not in his handwriting, subscribed by himself or some one lawfully authorized by him to do so. This statute is imperative, admits of no exception, and the court has no power or wish to go beyond its plain letter. We therefore feel constrained to adhere to the ruling made in the case of *Black* v. *Holland*, and to hold that the note sued upon in the present case was barred by the statute of limitations.

2. The statute relating to the limitation of actions is expressly made applicable to courts of equity, by the provisions of section 3775 of the Civil Code, wherein it is declared that :

"The limitations herein provided apply equally to all courts; and in addition to the above, courts of equity may interpose an equitable bar, whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." The plaintiff in error contends, however, that he is entitled to have the bar of the statute removed in equity under the provisions of section 3979 of the Civil Code, which provides that: "An honest mistake of the law as to the effect of an instrument on the part of both contracting parties, when such mistake operates as a gross injustice to one, and gives an unconscientious advantage to the other, may be relieved in equity." The substance of the allegations of the petition with reference to this point is, that the entry of credit was made upon the note with the common intent and belief that its legal effect would be to constitute a new point from which the statute of limitations would begin to run; in other words, that the parties were laboring under an honest mistake of law as to the legal sufficiency of the entry made to accomplish the purpose intended. The code provision invoked by the plaintiff in error can have no application to a case of this character. That provision applies solely to contracts, and the power there conferred can not be used to set aside and annul the positive provisions of the statute of limitations. It is a principle elementary in equity jurisprudence, that its jurisdiction is ancillary to and is exercised in consonance with the principles established by law. Indeed, by section 3923 of the Civil Code it is declared that: "Equity is ancillary, not antagonistic to the law; hence equity follows that law where the rule of law is applicable, and the analogy of the law where no rule is directly applicable." Thus in the earlier forms of the statute of limitations, when the provisions were in express terms confined to actions at law, and courts of equity were not therefore within the words of the statutes, those courts nevertheless proceeded upon the analogy of the enactments in most suits to enforce equitable titles to real estate and equitable personal claims, and applied the statutory periods. 1 Pomeroy's Eq. Jur. (2d ed.) § 419.

In 1 Wood on Limitations (2d ed.), § 58, it is said: "Courts

of equity, although not in all cases bound by the statute of limitations, unless expressly brought within its provisions, have nevertheless acted, in this respect, in analogy to courts of law, and given effect to the statute in all cases of concurrent jurisdiction; and it may be said that in such cases a court of equity will no more disregard the statute than a court of law. Indeed, Lord Redesdale, in an English case, before the adoption of the statute of Wm. IV., which expressly extends the statute to courts of equity, went so far as to hold that courts of equity did not adopt the statute merely by analogy of, but in obedience to, the statute; and so generally did the English courts of equity follow the statute, that the enactment of the statute referred to was regarded as little more than giving a statutory sanction to a well-established rule of those courts." Hovenden v. Annesley, 2 Sch. & Lef. 629. So in Angell on Limitations (6th ed.), § 25, it is said that from the period when proceedings at law were subject to particular limitations, courts of chancery have, with striking uniformity, applied it in similar cases within the sphere of their jurisdiction. See also, to same effect, Buswell's Limitations and Adverse Possession, § 18. Courts of equity act not so much in analogy as in obedience to statutes of limitation of legal actions, because, where the legal remedy is barred, the spirit of the statute bars the equitable remedy also. 1 Beach, Mod. Eq. Jur. § 20; 13 Am. & Eng. Enc. L. 675. And in the case of *Keaton* v. *McGwier,* 24 *Ga.* 217, it is said: "Statutes of limitation do obtain in a court of equity; and, to the extent to which they so obtain, a court of equity has no discretion to dispense with them, but is *bound* by them. True it is said that a court of equity 'acts by analogy' to these statutes. (1 Stor. Eq. Jur. § 64 a.) But this must mean that a court of equity is *bound* so to act, whenever a proper case arises."

It is said in 1 Wood on Limitations (2d ed.), § 136, that the statute is regarded as a defense, as well in equity as in law, where it confers absolute rights upon the party seeking its benefits. Thus, it would be preposterous to suppose that, where the title to lands has become absolute in a person by an adverse possession for the statutory period, a court of equity is not bound to give effect to such title, equally with a court of law;

and it may be safely said that, regardless of the question whether the statute is applied in express terms to courts of equity, it is in all cases, except where relief is sought on the ground of fraud, bound thereby, when the statute has conferred absolute rights upon a person, or when its jurisdiction over the subject-matter is only concurrent with that of courts of law. The principal reasons for this analogous application of the statute in courts of equity are, that the evils resulting from great delay in enforcing equitable rights are equally as great as those resulting from delay in enforcing legal rights, and also because unless courts of equity acted in analogy to these statutes in cases where a party has a choice of the forum, the result would be that the effect and real end of the statute would be eluded. Of like import, see 13 Am. & Eng. Enc. L. 675; Knight v. Brawner, 14 Md. 1; Wanamaker v. Buskirk, 1 Sax. (N. J.) 635; Watkins v. Harwood, 2 G. & J. (Md.) 307. In the case of Manning v. Warren, 17 Ill. 267, it is directly ruled, that although the statute of limitations may not in terms apply to courts of equity, yet by analogy equity will act upon the statute and will refuse relief where the bar is complete at law; citing 1 Story's Eq. Com. §§ 55, 529; Deloraine v. Brown, 3 Brown's Ch. R. 633; Smith v. Clay, Ibid. 639; Dearman v. Wyche, 9 Simons, 571; Kane v. Bloodgood, 7 Johns. Ch. 90; Stafford v. Bryan, 1 Paige Ch. 239; Humbert v. Trinity Church, 7 Ibid. 195; Watkins v. Harwood, 2 Gill. & J. 307; Miller's Heirs v. McIntyre, 6 Peters, 61; Elmendorf v. Taylor, 10 Wheat. 152.

The limitations as fixed by our statute apply equally to actions at law and to suits in equity. They are directed to the subject-matter and not to the form of the action, or the forum in which the action is prosecuted. The subject-matter of the present action is a promissory note, to the obligation of which the bar of the statute had become complete, prior to its institution; and the court had no power to remove the bar merely because of a mutual mistake on the part of the parties as to the legal effect of the entry of credit made on the note. In order to constitute a new promise so as to relieve the bar, or start the statute afresh, the law requires either an entry in the handwriting of the debtor, or, if in the handwriting of another,

that such entry be subscribed by the debtor himself, or by some one duly authorized by him to do so. If this requirement is not met, equity can not, as against the bar of the statute, reform the entry merely because the parties labored under the impression that the entry actually made was legally sufficient. Statutes of limitation are considered as beneficial and resting on principles of a sound public policy, and as not to be evaded except by the methods provided therein; indeed, they are now termed statutes of repose, and are regarded as essential to the security of all men. 1 Wood on Limitations (2d ed.), §4. And courts can not engraft on such statutes exceptions not contained therein, however inequitable the enforcement of the statute, without such exceptions, may be. Board Freeholders v. Veghte, 44 N. J. L. 509. In the language of Stephens, J., in the case of *Adams* v. *Guerard*, 29 *Ga.* 651: "I apprehend there is no case, certainly no case was produced in this argument, where a court of equity has relieved a party from the operation of the statute, where the bar had attached, before the case was brought in some shape into a court of common law or the court of equity. Courts of equity do not hesitate to protect a right which has become barred by the statute of limitations during the pendency of the same subject-matter in the court of equity, but to relieve from the bar where it has attached, before it is introduced into either court, would be to set the statute aside." A mistake of law as to the requisites of a new promise, not being an exception to the running of the statute, affords the court no discretion, but on an application for the interposition of equitable principles it is bound by the letter and spirit of the statute in the same manner as a court adjudicating on pure legal principles is bound; and therefore no error was committed in dismissing the petition upon demurrer setting up the bar of the statute as shown on the face of the pleadings.

*Judgment affirmed. All the Justices concurring.*