Shumate vs. Williams.

Daniel Shumate, plaintiff in error, vs. Jesse C. Williams, defendant in error.

In 1857, the making of a partial payment upon a note, and entering it as a credit, did not establish a new point from which to compute the time for bringing suit under the statute of limitations.

Plea of the statute of limitation.   In Wilkes Superior Court.   Decided by Judge Reese.   March Term, 1866.

This was an action brought by Daniel Shumate against Jesse C. Williams, on a promissory note, dated the 27th of June, 1854, and payable one day after date, for $628.42. The following credits were endorsed on said note :

Credits—$29.31, 18th April, 1856.
$31.67, 1st February, 1857.
$ 2.86, 20th March, 1861.
$10.95, 2d February, 1863.

The plaintiff offered in evidence said note with the credits thereon.

The defendant objected to the note being read, on the ground that it was barred on its face by the statute of limitations.

The plaintiff then tendered and offered to read the interrogatories of Mrs. Elizabeth L. Norman.  Defendant objected to them, as not taking the case out of the statute of limitations.  The court overruled both objections, and admitted the note and interrogatories in evidence, with the understanding that he would explain their legal effect to the jury.

The following is the testimony of Mrs. Norman : She stated that she knew the parties ; that she had seen the note and credits before, when the parties had settlements, and at other times ; she saw the credit of February 2d, 1863, and February 1st, 1857 ; and that Jesse C. Williams, Daniel Shumate, and herself were present when the credit of February 2d, 1863, was made, and there were no objections

made, whatever, but both parties consented. She further says that the dates and amounts are correct, to the best of her knowledge. She saw the credit of April 18th, 1856, soon after it was put on the note, and prior to the 28th of June, 1860; and she saw the credit of February 1st, 1857, put on as stated in the foregoing answer. She says Williams was present when the amount of $31.67-100, was paid, the 1st of February, 1857, and when the payment of $10.95-100 was made, February 2d, 1863. She does not recollect the time when she first saw the credit of 18th of April, 1856, but according to the best of her recollection, it was soon after it was made; and that when the last credit was entered on the note, Williams had it in his hands, looked over the credits, and made no objection to any of them; but, on the contrary, admitted they were right. She cannot say whether the credits were all entered by plaintiff himself, but believes they are in his hand-writing. She repeats that she saw the credit of 1863 put on the note, and was present when the credit of 1857, was entered, but not paying particular attention, is unable to answer whether the plain-. tiff or defendant wrote the credit of 1857.' She does not know whether the defendant wrote any of the credits.

She is related to the plaintiff, and has resided in his family about twenty-three years.

Upon hearing the testimony, the Judge charged the jury as follows: "The plaintiff in this case sues the defendant on a promissory note made 27th June, 1854, and due one day after date. The defendant relies solely on the ground, that the note is barred by the statute of limitations. To this plea of the statute the plaintiff replied, that certain credits entered on the note removed the bar of the statute. In relation to these credits, I charge you, if they are not in the hand-writing of the defendant, or some one authorized by him to enter them, (and the holder of the note cannot be the agent of the defendant for this purpose) then these credits do not remove the bar of the statute. Under the limitation law in force in this State when the credits were

made, if they were made by the holder of the note, even though by the knowledge and consent of the debtor, Williams, they cannot prevent the statute bar, and are not to be taken as proof of a new promise, so as to save the note from being affected by the statute."

The jury found a verdict for the defendant.

The plaintiff excepted to the charge of the Court, and says:   1. That the Court erred in charging the jury that if the credits on the note are not in the handwriting of the defendant, or of some one authorized by him to enter them, then these credits do not remove the bar of the statute.

2. In charging the jury that the plaintiff, being holder of the note, could not be agent of the defendant in entering these credits.

3. In denying that, if the credits were made by the holder, even with the knowledge and consent of the debtor, Williams, they could not remove the statutary bar.

SAMUEL BARNETT, for plaintiff in error.

L. E. BLECKLEY, for defendant in error.

LUMPKIN, C. J.

This action wascommenced after the note had been due more than six years; consequently, unless upheld by the credits, it could not withstand the defendant's plea.

Giving to the parol evidence full effect, it proves only that these credits are correct, that they represent payments actually made, and were entered by the plaintiff in the presence of defendant, and with his consent.   The question, then, is, did they prevent or avoid the bar of the statute?

The plaintiff's counsel, in his argument before us, frankly admitted that this effect could not be claimed for the first credit, nor the last.   Not for the first, because governed by the Act of 1854; nor for the last, because governed by the Code.   He rested his whole case upon the larger of the two

intermediate credits, namely, that for $31.67, dated February 1st, 1857, passing over the smaller as not needed for his purpose, and, perhaps, as not quite so well supported by the parol evidence.

The credit thus singled out as sufficient to hold in check the staute of limitations, was entered while the Act of 1856 (*Pamphlet p.* 233) was in force, and before the note was barred upon its face. The 25th section of that Act is as follows: "That in all cases of contracts for the payment of money, or other valuable thing, when the time within which suits are to be brought under the provisions of this Act, shall have expired, no promise· to pay the money, or other valuable thing due upon such contract, or any part of it, shall be valid or binding upon the parties making it, unless the same shall be reduced to writing, and signed by the party making such promise, or by some person authorized by them." By a previous section, (the 9th) the time for suing on promissory notes had been limited to six years, " and not after."

The counsel's position is, that the Act requires, not all new promises to be reduced to writing and signed, but such only as are made after the debt is barred—after the legal liability to pay is gone, and a bare moral obligation remains.

There is, confessedly, some ambiguity in the 25th section. Does it mean, broadly, that when six years have expired after the maturity of a note, without suit thereon having been instituted, no promise to pay it, whatever, not verified by some writing duly signed, shall 'be treated as binding? Or does it mean, more restrictedly, that this is to be the consequence *provided* the promise was made after the expiration of the six years?

We find it needless here to enter into any nice distinctions based on turns of expression or the collocation of words. The resources of mere verbal criticism, though often useful, may be neglected where there is broader and better light. Statutes *in pari materia* are to be construed together, as parts

of one system. The policy of meeting the Statute of Limitations with new promises not in writing and signed, received, throughout its whole extent, a legislative condemnation by the Act of 1854. This Act has been construed in *Holland vs. Chaffin & Lane,* 22 *Ga. R.* 343. It declares that "No promise, acknowledgment, or admission of a debt, made after the Statute of Limitations has commenced running, shall be sufficient to revive the same, unless such promise, acknowledgment, or admission shall be reduced to writing, or some note or memorandum thereof made in writing, and subscribed by the person or persons making the same, or some other person thereunto by him lawfully authorized." The Code, begun in 1859, finished and adopted in 1860, is equally explicit on the general subject, though it accepts the debtor's own hand-writing as a substitute for *signing*, and, in harmony with this innovation, recognizes a credit entered by the debtor himself, or any other written acknowledgment of the existing liability, as equivalent to an express promise. *See* § 2876. Section 2875 is as follows: "A new promise, in order to renew a right of action already barred, or to constitute a point from which the limitation shall commence running on a right of action not yet barred, must be in writing, either in the party's own hand-writing, or subscribed by him or some one authorized by him."

Thus, shortly before and shortly after this doubtful Act of 1856, we have a clear expression of the legislative will. Besides, this Act, itself, was a part of the statute law which the Commissioners were instructed to codify ; and the presumption is a fair one, that the Code correctly renders the substance of all statutes then in force, except where modification plainly appears. It would be making a too limited use of this great book, to consult it only for the present state of the law, overlooking the fact, that while it introduces numerous changes, it is mainly a declaratory exposition, in a concise and systematic form, of the body of laws, Common and Statute, which the codifiers found already established. One of its prime objects was to clear up

obscurities and resolve doubts. It speaks to us of the past, as well as of the present and future; not, it is true, in the same imperative voice, but with that mitigated authority which belongs to legislative interpretation, led and directed, in this instance, by the professional ability, both of the codifiers themselves and of the committee of lawyers who, after scrutinizing their work, approved it and recommended its adoption.

We have seen that neither in the Act of 1854 nor in the Code, is there, touching new promises, any distinction founded, merely, on their dates relatively to the bar of the original debt. For certain purposes, such a distinction has, formerly, sometimes been recognized by the courts. It has been made to control points of pleading, and the implied authority of one of several joint debtors to bind his associates. These instances fall under the law of pleading and of agency. But has any decision or any statute ever called for a more solemn act to constitute a valid new promise, or higher evidence to prove it, because the date of the alleged promise was subsequent to the bar of the original debt—that is, more recent than it would have been, had the transaction occurred before the bar attached? The dangers that attend parol testimony constitute the chief reason for requiring private contracts, of any kind, to be manifested by writing. These dangers are three : misapprehension, misrepresentation, and forgetfulness. The witness may have failed, at first, to understand the facts fully and correctly; he may pervert them, now, by perjury; or he may be unable to recite them all with strict accuracy, by reason of a faded memory. To withdraw from these perils recent transactions only, leaving remote ones of precisely the same class exposed to them still, would be a wild freak in legislation. If a witness is cut off from establishing a new promise, made but a single day before the suit was brought, why should he, by the same law, be trusted to set up one made five years earlier? Surely, his past perceptions—his apprehension of what he had seen and heard—would not be aided by the lapse of

time; his memory, however retentive, would not be less apt to miscarry; nor his conscience, if inclined to perjury, be more likely to adhere to truth.   On the contrary, the soundest fruits, both of memory and veracity, are those gathered early.   As a general rule, witnesses are best able to speak the truth immediately after the occurrence; and they know that if they deviate from it wilfully, detection and exposure are more imminent.   This knowledge is some restraint on mendacity.

From these considerations it appears, that the chief reason which must have moved the Legislature to pass the 25th section of the Act of 1856, is not confined to new promises made subsequently to the bar of the statute, but that it extends, not only with equal but with augmented force, to antecedent ones.   This shows what the section ought to mean, and, therefore, tends to show what it does mean.   So suggestive is it, that upon this ground alone, the letter being ambiguous, we might give the section the more comprehensive reading contended for by the defendant.   It is no new thing for Courts to go even farther than this.   They habitually follow the reason and spirit of remedial statutes till they overtake and destroy the real mischief which the Legislature designed to suppress.   In so doing, they often pass quite beyond the express letter of a statute, even when well defined.   *Executors of Henderson vs. Alexander*, 2 *Kelly* 81 *; Booth vs. Williams, id* 252 *; Howard vs. The Central Bank*, 3 *Kelly* 380 *; Ragland vs. The Justices*, 10 *Ga. R.* 71.

It is worthy of notice that the Act of 1856 was, itself, a codification, and that, too, not alone of the law establishing bars to actions, but of that, likewise, regulating the means of avoidance;—not of the rules only, but also of the exceptions.   In such a codification, so extensive, thorough, and minute, why did the Legislature omit to mention the effect of credits, part payments, verbal acknowledgements, &c., but because it intended to prescribe one simple, uniform rule for all new promises, namely, that they should, after the original debt was barred, have no force unless manifested by

some writing duly signed? Thus understood, the Act is complete, embracing not merely a part, but the whole law of new promises, as related to the subject of limitations. Thus understood, it re-enacts, substantially, the Act of 1854.

It is not enough, however, for the plaintiff to show that the Act of 1854 was not re-enacted : he must go further, and show that it was repealed. His counsel, seeing this, insisted that the Act of 1856, through the 25th section, repealed it by implication, and through the 41st section, repealed it expressly.

After what has already been said on the 25th section to prove that its provisions are the same as those of the prior Act, it would be idle to discuss the question of repeal at length. The kind of conflict which must exist to work a repeal by implication is surely not found here. *See Girardy vs. Dougherty*, 18 *Ga. R.*, 262 ; *Erwin vs. Moore*, 15 Ga. R., 365–6, 371–2.

The words relied upon as an express repeal are as follows : "That all acts and parts of acts limiting the time within which suits are to be brought * * * * and also all other acts or parts of acts, conflicting with the provisions of this, be and the same are hereby repealed."

Is the Act of 1854 an act "limiting the time within which suits are to be brought?" Such is not its title; and if it were, would not the act be unconstitutional because of the misnomer. It mentions no action, and no time for bringing an action, but is simply an amendment to the law of evidence as related to new promises. Would such an act be suspended by our late laws suspending the "Statute of Limitations?" If so, *all* new promises made during several years past, may be enforced. The Act of 1856, itself, is, by its caption, something more than an Act limiting the time within which suits are to be brought; it is "for other purposes," also, under which terms the subject of evidence, or any thing else might be embraced.

The Attachment Act of 1856 declared "That all Acts and

parts of Acts upon the subject of attachments and garnishments, be, and the same are hereby repealed;" and yet it was held that a prior Act exempting wages from garnishment was left in full force. *Carker vs. Mathews*, 25 *Ga. R.*, 571; *Russell vs. Arnold*, *id.*, 625.

Judgment affirmed.