## Dobson *vs.* Dickson, administrator.

1. The plaintiff in an action upon a negotiable instrument barred on its face by the statute of limitations, is not a competent witness to prove acts or admissions of the maker, which came to the plaintiff's knowledge whilst he was disinterested, tending, with the aid of written evidence, to establish a new promise alleged to have been made to the payee, the maker being now dead, and the action being against his administrator.
2. The creditor is not the agent of the debtor in entering a credit upon

the evidence of debt—certainly not without express authority in writing; and where the authority was sufficiently definite to create the agency, it would be sufficient to raise a new promise as to the balance, whether the credit was entered or not.

3. Letters or other detached writings which do not describe the debt so that it may be identified with reasonable certainty, are not of themselves enough to connect the new promise which they express or imply with the particular debt declared upon.

Witness. Statute of limitations. New promise. Evidence. Before Judge HALL. Newton Superior Court. September Term, 1878.

On August 27, 1877, Dobson brought complaint against Dickson as administrator of David Dickson, deceased, on a note under seal, dated February 18, 1848, payable one day after date, to Josiah Dickson, or bearer, for $8,788.75. On the note were credits as follows: December 2, 1848, $60.00; January 18, 1850, $40.43; April 18, 1860, $100.00; May 6, 1860, $460.00; July 23, 1869, $1,000.00; May 1, 1870, $3.30; May 1, 1871, $500.00. The defendant pleaded the general issue, the statute of limitations, and especially the bar of the statute of March 16, 1869.

The plaintiff introduced in evidence the note sued on, two letters from defendant's intestate, one to the son of Josiah Dickson, the payee, and one to the plaintiff; also a portion of a letter to said payee, as follows:

(Letter No. 1.)

"OXFORD, GA., February 24, 1872.

"DEAR NEPHEW: Yours informing me of the sad news of the death of my brother is received. I had learned that he was in bad health for the last three or four years. I am very sorry that I am unable to do anything for the family. For the last two years I have lost money—am not so well off as I was two years ago. Whenever I was able to do anything for brother I have done so. But having lost my energy from feebleness and old age, I have despaired of ever making anything of consequence. I now have a house to live in, and about thirty-five acres of land and a little stock, and I am owing a few hundred dollars for that.

"After the close of the war the legislature passed a law allowing every family to have a house to live in and some little land and stock

not subject to pay debts, and in 1870 the legislature passed a law that all debts that were created before the war were null and void unless they were sued on during the year 1870. I lost some by that law, as I did not sue on all the debts due me, thinking the parties would pay me without suit, but as I cannot now bring suit against them, they will not pay me."

(Letter No. 2.)

"Oxford, Ga., March 16, 1871.

" G. W. Dobson, Esq.:

"I shipped to Messrs. Fallows & Co., Camden, Arkansas, care Wm. M. Pinckard, New Orleans, 1 box cotton seed, 1½ bushels, for you, which you will receive in good time. When received pay brother $5.00 for them."

(Letter No. 3.—Being only a portion of a letter without date.)

"for bring suit. I only regret that you are mistaken with regard to your own interest, and hoping you may give the subject matter your most serious and philosophical reflection and act accordingly, I leave the subject with you. As I feel a deep interest for your prosperity, I would like to know how you came out with the Savannah claims.

" P. S. Mr. Clark is not willing to give that attention to the business of Phillips, Graves & Co. which it ought to have. It has already been too much neglected. I was thinking a few days ago that I had nearly paid Reese and McHenry, and would soon get such a start as to begin to help you, but if you continue the suit against me I will despair of ever being able to pay you anything. What I make is for you, after paying off Phillips, Graves & Co., which you are entitled to a large portion of, and if I make anything and die before I pay it over to you, you will get it, as I could not will it to my children, even if I were base enough to do so. I have been so drained to keep those claims from going against you that I have not had a fair chance to make anything for you. I see that you have entirely mistaken my character, which is very unfortunate for yourself, for if I do not do something for you I think you are too far gone ever to do anything for yourself, as you have lost the means of doing much." (This letter was folded in the old style, without an envelope, sealed with a wafer, and address: " Mr. Josiah Dickson, Lafayettee, Chambers Cty., Ark.")

The plaintiff offered also his answers to certain interrogatories, to the following effect: Was living with Josiah Dickson, in 1866, in Columbia county, Arkansas, and received the note sued on from him to take with witness to Georgia, to make a collection thereon. Did not see Josiah Dickson, but wrote to him concerning the matter from LaGrange. He wrote to witness that he had been so badly torn up by

the war, he had nothing to pay with; also, to tell his brother that he would help him as soon as he was able to do anything for him. When witness returned from Georgia he handed the note to Josiah Dickson and read him the letter.

The fourth credit on the note was placed thereon thus: Witness paid to Josiah Dickson $260.00 being the proceeds of cotton seed which he had sold for David Dickson, and which the latter directed should be credited on the note. This was done in July, 1869. At the same time William C. Dickson handed to his father Josiah, a draft which he brought from Mississippi. Witness received a letter from the said David authorizing these two amounts to be paid to the said Josiah, and to be credited on the note.

Does not remember whether the credit of $1000.00 was entered by the said Josiah or the said William C., but is certain that it was by one or the other. This credit witness knows was made by authority of the said David. The credit of $3.50 witness paid to the said Josiah by direction of the said David, as a credit on said note. Has seen letters from the said David to the said Josiah in which he acknowledged the indebtedness, in one of which he said about this: "My brother, I cannot pay you the full amount of that note at one time. After taking care of my family and supporting them, I will pay you all that I can spare." This letter was written in 1868, and was turned over with other letters that I had from David Dickson to Cook & Parks, attorneys of this place, over two years ago, and by them witness has been informed that they forwarded the same, together with the note sued on, to one A. L. Mitchell, an attorney in the state of Georgia. Has not since seen said letters, and knows not where they are. Witness purchased the note at the administrator's sale of the personal assets of the estate of the said Josiah. All of the credits were then on the note.

To these answers it was objected that they were inadmissible because David Dickson was dead. The objection was sustained, and the answers excluded.

Plaintiff closed and the defendant introduced no evidence. Under the charge of the court the jury returned a verdict for the defendant. The plaintiff moved for a new trial upon the following grounds, to-wit:

1. Because the court erred in rejecting the deposition of plaintiff upon the ground above stated.

2. Because the court erred in charging as follows: "If a credit was entered upon the note between the 16th of March, 1869, and January 1, 1870, by David Dickson, or by some one (except the holder of the note) authorized by him, then the act of 1869 did not apply to this note. The holder of the note cannot be the agent of the debtor to make the entry of credit."

3. Because the verdict was contrary to law and evidence.

The motion was overruled and the plaintiff excepted.

A. B. SIMS; E. F. EDWARDS, for plaintiff in error.

CAPERS DICKSON, for defendant in error, cited, on bar of statute, Code, §2915; 49 *Ga.*, 441; 50 *Ib.*, 382; 54 *Ib.*, 591; 55 *Ib.*, 35, 56, 85, 187, 264. On rejection of deposition, Code, §§3767, 3831, 3854; 38 *Ga.*, 103.

BLECKLEY, Justice.

1. There was no material fact in the rejected testimony of the plaintiff (whose interrogatories were excluded on the ground that the other party was dead) except as to what the deceased had done, or spoken, or written. Was the plaintiff competent to prove these things  It is said that because his information was acquired before he purchased the note and while he was wholly disinterested, he was competent—that a subsequent interest, and his being a party to the suit, would not disqualify him. Surely this position is not tenable. If a person voluntarily destroys his competency as a witness, he himself cannot complain. But in

fact the plaintiff has the very same competency now which he had before. His original competency was not to testify for himself against a dead man's estate, but for another, and he can still testify for others. He has no less competency now to testify in his own behalf than he had in the beginning. The death of his adversary has affected him just as such a casualty affects everybody else who comes as a creditor to coerce payment by an administrator. Code, §3854.

2. The note on its face was barred by the act of 1869. Of this there can be no doubt. Was there a new promise after June 1st, 1865? This depends on whether any credit later than that date was in the handwriting of the debtor, and if not, whether a promise to pay this identical note can be found in, or inferred from, his letters, or any of them. The note, with the credits thereon, and the letters, were all the evidence before the jury, the plaintiff's evidence by interrogatories having been ruled out. Grant that the plaintiff was competent to prove handwriting, still he did not do it. He could go no further than to say that the entry of a certain credit was either by the debtor, or by the payee with his authority. Here he was on ground to which his competency as a witness did not extend; but had it been otherwise, there is no proof that there was any authority in writing, and if it were only in parol, it would be insufficient; for a credit entered by the payee under that kind of authority would be exposed to all the evils which the statute intended to remedy by requiring new promises to be in writing. Code, §2934. If the creditor could be the debtor's agent to raise a new promise by entering a credit, his authority would have to be in writing; and if in writing, and sufficiently definite as to the debt, etc., the authority itself would amount to a new promise, whether the credit was entered in pursuance of it or not. *Hammond's adm'r. vs. Carter & Shelton*, this term.

3. The jury, doubtless, scrutinized the letters, and as their verdict shows, they did not gather any new promise from

them which could be identified as referring to this debt. The letters do not specify any particular debt whatever, and they seem to us. too vague and indefinite in that respect to warrant a recovery on the antiquated demand. 55 *Ga.*, 264. When the suit was brought the note had been due more than twenty-nine years, and the general statute of limitations, to say nothing of the act of 1869, gave but twenty years for suit on such an instrument.

Judgment affirmed.